IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 1:21 CR 00620 |
| Plaintiff, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| LANA JOHNSON, | ) |
| Defendant. | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |

This case is now before the Court on Defendant Lana Johnson's ("Defendant") *Motion to Stay Execution of Judgment Pending Appeal to the Sixth Circuit* (ECF #111), filed by Johnson on March 22, 2023. Plaintiff, United States of America ("Government") filed an opposition to the motion, titled *Government's Response in Opposition to Defendant's Motion to Stay Execution of Judgment Pending Appeal* (ECF #114) on April 21, 2023. Defendant did not file a reply. For the reasons set forth below, Defendant Lana Johnson's motion to stay execution of judgment is DENIED.

## I. BACKGROUND FACTS

On June 2, 2021, while conducting a "spot-check" surveillance of various locations in an Ashtabula, Ohio neighborhood where a number of instances of drug activity had been reported, Ashtabula Police Detective Michael Palinkas ("Detective Palinkas") observed a truck parked in

the driveway of a residence occupied by Lester Johnson. (ECF #105 [*Hearing Transcript on Motion to Suppress* 8/31/2022], PageID #459-460). As he passed by, Detective Palinkas saw that Defendant Lana Johnson appeared to be slumped forward in the front passenger seat, while the driver's side door was open. (ECF #105, PageID #460). At the time of first observing this, he drove on by, continuing his surveillance, as he believed that what he observed may have been Lana Johnson reaching for something on the floor of the truck. (ECF #105, PageID #460).

About twenty minutes later, Detective Palinkas passed the residence again, and found that Lana Johnson had not moved, and was still slumped forward in the passenger seat of the truck, and appeared to be unconscious and possibly overdosing. (ECF #105, PageID #460-461). Detective Palinkas then stopped, got out of his car, and approached. (ECF #105, PageID #461). At first, Defendant Johnson was unresponsive, but Detective Palinkas was later able to engage in some conversation with her, though during that conversation he observed that Defendant was covered in sweat, had slurred speech, and constricted pupils – each indicating a potential overdose situation. (ECF #105, PageID #461). Detective Palinkas then called for additional officers, as well as an ambulance. (ECF #105, PageID #461-462).

While Detective Palinkas was waiting for the police officers and the ambulance to arrive, Lester Johnson came out of the residence and stated that Defendant was diabetic. (ECF #105, PageID #465). This information confirmed Detective Palinkas' concerns about a medical situation. (ECF #105, PageID #465).

As the additional officers arrived on-site, and Community Care Ambulance arrived just thereafter, Detective Palinkas learned from a radio dispatch that there was an outstanding warrant for Lana Johnson's arrest with the Ashtabula County Sheriff's Office. (ECF #105, PageID

#463). Upon learning this, Detective Palinkas advised Lana Johnson about the outstanding warrant, and that, because of the warrant, she would be detained. (ECF #105, PageID #463-465). In addition, because of his belief that he was dealing with a potential overdose, Detective Palinkas requested that a canine unit respond to the scene. (ECF #105, PageID #465-466). When the canine unit arrived, Detective Palinkas asked Lana Johnson to step away from the truck while the canine unit did an "open air or walk-around" of the vehicle. (ECF #105, PageID #466). During the walk-around, the canine alerted on Lana Johnson's purse, which was on the front passenger seat of the truck. (ECF #105, PageID #467). In the purse was found Defendant's ID and a small baggie containing a brown powder substance consistent with heroin or a fentanyl analog. (ECF #105, PageID #467).

Upon finding the baggie in the truck, the other officers on the scene secured the residence while Detective Palinkas obtained a search warrant, based on suspicions he had developed from conversation he had with Lester Johnson, that additional drugs may be possibly inside the residence or in the vehicle. (ECF #105, PageID #468). Lana and Lester Johnson were then read their *Miranda* rights. (ECF #105, PageID #468). At the same time, Detective Palinkas also asked the other officers to conduct a protective sweep of the Johnsons' residence, to control the scene for firearms and to make sure that any additional narcotics that might be on scene were not destroyed. (ECF #105, PageID #469). During the protective sweep, a person within the residence, [A.J.], came out and spoke with the officers. A.J. indicated that she and Lana Johnson had just returned from Akron, where they were visiting a family friend, and that they had purchased some "slow," a street name for heroin and/or fentanyl. (ECF #105, PageID #469-470). A.J. also indicated that a large quantity of additional drugs were within the residence. (ECF

-3-

#105, PageID #470).

Shortly thereafter, based on the information learned from A.J., as well as the other information obtained earlier, a search warrant was obtained, and a search of the Johnsons' residence uncovered a substantial amount of crystal methamphetamine in a bag on top of a container in the Johnsons' bedroom, and other small quantities of methamphetamine within the bedroom along with some pills not then immediately identified, digital scales, and other items often used for packaging narcotics. (ECF #105, PageID #472-473).

On August 25, 2021, a federal grand jury returned an indictment charging Defendant Lana Johnson with: conspiracy to possess with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 846; and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (ECF #1 [*Indictment*], PageID #1-3).

On May 18, 2022, Defendant filed a motion to suppress, arguing that: (1) Palinkas had no right to be on Defendant's property; (2) the canine "walk around" was not permissible; and (3) there was insufficient probable cause for a search warrant to be issued. (ECF #45 [*Motion to Suppress*], PageID #113-122). After a two-day hearing on Defendant's *Motion to Suppress*, the Court denied Defendant's motion, noting the following:

> Now, based on again the totality of the circumstances, [Palinkas] making these observations, knowing what he knew, that people at that location were involved, at least he had heard or there was evidence that he had that they were involved in drug transactions and drug use, and that there was somebody [who] had overdosed at that location at some time in the past, all this information – I mean, he had a duty really to try to render aid even if the individual didn't want it.
>
> \* \* \* \* \*
>
> In this case, he did absolutely the right thing. He calls an ambulance with people who are especially trained to take care of people who maybe overdose or are ill for some other reason. . . .

-4-

> And then he learned that who she was, checked her date of birth, found out there was a warrant out for her arrest. And again, he had a right to detain her, and he did detain her at that time.
>
> So now he's got the idea that there's a warrant for her arrest, he thinks she's under the influence of drugs. The location has been well known for drug use and abuse. And so he calls for the Canine Unit, which is perfectly proper because he had a right to be where he was, make the observations that he did at the time, and there was a reasonable suspicion that this woman was under the influence of drugs, that there were drugs nearby.
>
> * * * * *
>
> I wanted to say one thing about the instinctive acts of a trained canine is not reason to invalidate the search. And the [K-9 Patrolman] said several times that when [the canine] changes his behavior it was an instinctive reaction by the canine, or jumping up into the open passenger door, and so that would not be a reason to negate the search by the dog.
>
> And then when we get to ultimately can [the Ashtabula police officers] secure the location and wait to obtain a search warrant, the answer is yes. * * * [And even] if I take [A.J.'s] information out of the affidavit, would it still establish probable cause to search the location[;] and based upon at least what Detective Palinkas testified here today, he had information from two reliable sources and that they had been proved reliable in the past, and he made a very strong point about how they were reliable, and what that information had accomplished in the past. [And he] gave that information to an impartial magistrate, and the magistrate judge issued the warrant.
>
> Now, [even] if there was some defect in [the process] the officers have every right to believe the warrant was valid. They don't put anything that was intentionally false in the affidavit in order to make the magistrate or the judge believe that it was true. Everything in there, based upon what I have before me, was true, and so even if the . . . affidavit was defective the officers didn't know it, and under *U.S. v. Leon* [468 U.S. 897 (1984)] that's appropriate.

(ECF #106 [*Hearing Transcript on Motion to Suppress*, 9/8/2022], PageID #589-593).

Defendant subsequently pled guilty to the charges filed against her, pursuant to a written plea agreement, (ECF #92, PageID #412), and was sentenced by this Court to 32 months' imprisonment. (ECF #93, PageID #413). The plea agreement reserved Defendant's right to

appeal the denial of her *Motion to Suppress*. (ECF #92, PageID #406). Defendant then filed a timely *Notice of Appeal*, on February 3, 2023. (ECF #95, PageID #423).

On March 22, 2023, Defendant filed her *Motion to Stay Execution of Judgment Pending Appeal to the Sixth Circuit* (ECF #111), which is now before the Court. The grounds for Defendant's motion is that "she does not pose a risk of danger to the community [if] she were to remain on bond pending appeal," and that "[she] has several chronic health issues that are documented in her presentence report and require ongoing medical care," (ECF #111, PageID #650). No reference to the substantive claims of her appeal is mentioned.

## II. LEGAL STANDARD AND ANALYSIS

The standards governing evaluation of a defendant's motion are set forth in 18 U.S.C. § 3143(b)(1), which provides:

> **Release or detention pending appeal by the defendant.–(1)**
>
> Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds–
>
> > **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> >
> > **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in–
> >
> > > **(i)** reversal,
> > >
> > > **(ii)** an order for a new trial,
> > >
> > > **(iii)** a sentence that does not include a term of imprisonment, or
> > >
> > > **(iv)** a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal

process.

> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title . . . .

18 U.S.C. § 3143(b)(1).

The Sixth Circuit has interpreted section 3143(b) to create a "presumption against release pending appeal." *United States v. Terry*, No. 1:10-CR-0390, 2011 U.S. Dist. LEXIS 121016, at *3 (N.D. Ohio Oct. 19, 2011) (citing *United States v. Scherer*, 101 F. App'x 1002, 1003 ("This statute creates a presumption against release pending appeal"), and *United States v. Vance*, 851 F.2d 166, 168-69 (6th Cir.), *cert denied*, 488 U.S. 893 (1988) ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal")). Thus, the defendant bears the burden of proof to show that he or she satisfies the requirements of 18 U.S.C. § 3143(b).

The first requirement relates to evaluation of risk of flight or danger to the community. Under section 3134(b)(1)(A), a court has broad discretion to determine whether a defendant has established "by clear and convincing evidence the [defendant] is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3134(b)(1)(A). In doing this, the court must "consider the available information concerning several factors, including: (1) the nature and seriousness of the offense charged; (2) the weight of the offense charged; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." *Vance*, 851 F.2d at 169-170.

In its opposition brief, the Government does not contend that Defendant poses a risk of

flight or a danger to the community "at this time." (ECF #114, PageID #662 n.1). In reviewing the record, particularly the *Final Revised Presentence Report* (ECF #98), and the portions of that report cited by Defendant regarding Defendant having complied with all Court ordered conditions of release, having no prior adult criminal convictions before the conduct at issue, and the presence of various significant and chronic health issues requiring medical care (ECF #111, PageID #650), the Court is inclined to agree that Defendant does not appear to be a flight risk or a potential danger to the community.

However, in conducting its analysis, the Court must also find that a defendant seeking release pending appeal has overcome the presumption against release with clear and convincing evidence of the factors set forth in section 3143(b)(1)(B), regarding the quality and strength of the issues raised on appeal, particularly whether a pending appeal raises a "substantial question of law or fact" likely to result in a reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the time already served at the time of the motion plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B).

The Sixth Circuit has held that the question of law must be a "close question or one that could go either way." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (adopting a standard first stated by the First Circuit, followed by the Second, Fifth, Seventh, Eighth, and Tenth Circuits, and later refined by an en banc decision of the Eighth Circuit, in *United States v. Powell*, 761 F.2d 1227 (8th Cir. 1985) (en banc)). A defendant must "raise a substantial question on appeal of his conviction, such that he satisfies the requirements of 18 U.S.C. § 3143(b)." *United States v. Word*, 798 F.2d 471 (6th Cir. 1986) (unpublished, *see* 1986 U.S. App. LEXIS

27823, at *7). The Sixth Circuit has further held that "mere identification of issues does not demonstrate that an appeal establishes a substantial question entitling the defendant to release pending appeal." *United States v. Moore*, 849 F.2d 1474 (6th Cir. 1988) (unpublished, *see* 1988 U.S. App. LEXIS 8574, at *2). A defendant must raise specific issues in his or her motion to stay, and further demonstrate how these issues would establish a substantial question on appeal. *United States v. Robertson*, No. 21-5767, 2021 U.S. App. LEXIS 27054, at *3 (6th Cir. Sept. 8, 2021). If the defendant does in fact raise a "substantial question," that question must be "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182.

In her motion, Defendant does not identify any legal question raised on appeal, "substantial" or otherwise. To prevail on a motion to stay, a defendant must identify specific appellate issues and demonstrate the likelihood of success on those issues. 18 U.S.C. § 3143(b)(1)(B). Mere identification of issues is not sufficient. Here, no issue raised on appeal is identified at all.

Accordingly, Defendant's motion does not satisfy the standards set forth in 18 U.S.C. § 3143(b), and denial of the motion is appropriate under applicable law.[1]

---

[1] The Court notes that it had granted two requests for continuance of the sentencing hearing following Defendant's Change of Plea Hearing (ECF #80), on September 30, 2022, and the subsequent completion of the Final Presentence Report (ECF #85), on December 20, 2022, to allow Defendant to attend to her medical and other personal affairs. (ECF Unnumbered Entry of 12/21/2022 [continuing sentencing date to January 10, 2023, then to January 11, 2023] & ECF #88 [continuing sentencing date to January 31, 2023]). The Court also notes that Defendant will be able to obtain medical care for her various medical conditions while serving her term of imprisonment.

### III.  CONCLUSION

For each of the reasons stated above, Defendant's *Motion to Stay Execution of Judgment Pending Appeal to the Sixth Circuit* (ECF #111) is DENIED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: **May 3, 2023**